UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-14132-CIV-MOORE/MAYNARD

CHERYL LEBEAU
O/B/O Thomas F. LeBeau,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Cheryl LeBeau, commenced this action on behalf of her deceased husband, Thomas LeBeau, pursuant to the Social Security Act to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Mr. LeBeau's application for Disability Insurance Benefits ("DIB") [DE 1].

Defendant has filed the certified administrative record [DE 17 (cited herein as "R. __")), Plaintiff has filed a Motion for Summary Judgment [DE 20]. Defendant has also filed a Motion for Summary Judgment [DE 25], to which Plaintiff replied [DE 26]. Having reviewed the pleadings, and the administrative record, I respectfully **RECOMMEND** that Defendant's administrative decision be **AFFIRMED** for the reasons set forth below.

## BACKGROUND

On June 5, 2018, Mr. LeBeau filed his application for disability insurance benefits, alleging disability beginning on July 18, 2015, due to back problems, neck problems, and headaches. R. 178-212. Mr. LeBeau was 55 years old on his alleged onset date with a high school education and

past relevant work as a building superintendent, a construction worker I, and a trailer assembler I. R. 27, 34-35.  Mr. LeBeau's claim was denied initially and on reconsideration.  R. 39-59, 65-76.  Mr. LeBeau then requested a hearing before an Administrative Law Judge ("ALJ") on November 26, 2018.  R. 77-78.

Sorrowfully, two days later on November 28, 2019, Mr. LeBeau died of a heart attack.  R. 245-46.  Mr. LeBeau's widow, Cheryl LeBeau ("Plaintiff"), was substituted as a party upon Mr. LeBeau's death.  R. 245-46.

On June 11, 2020, ALJ Dennis Hansen held a hearing at which Plaintiff was present with her counsel Louis Turco, Esq.  R. 24-38.  Plaintiff and vocational expert Regina Kitzmiller testified at the hearing.  On July 1, 2020, following the hearing, the ALJ issued an unfavorable decision finding Mr. LeBeau not disabled from his alleged onset date through his date of death.  R. 11-23.  On February 4, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1-3, 160.  Plaintiff has exhausted her administrative remedies and now seeks judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

To qualify for Social Security benefits, a claimant must show that he or she is disabled.  *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. §§ 404.1512(a), 416.912(a).  The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is one that "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A disability benefits claim follows a multi-layered process before it can be reviewed in federal court. A claimant first applies to a state agency for disability determinations, 42 U.S.C. § 421(a), after which the claimant is entitled to an evidentiary hearing before an ALJ. *Heckler v. Day*, 467 U.S. 104, 106–07 (1984). An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines if a claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"); (4) can perform past relevant work based on a residual functional capacity ("RFC") assessment; and (5) retains the ability to perform any work in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *Hines–Sharp v. Comm'r of Soc. Sec.*, 511 Fed. Appx. 913, 915 n.2 (11th Cir. 2013). If an individual is found disabled or not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 416.920(a).

A claimant may appeal an ALJ's unfavorable decision to an Appeals Council that must review the case and determine if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Heckler*, 467 U.S. at 106-07; 20 C.F.R. § 404.970(a). After completing the foregoing administrative process, a claimant may seek review in federal court. 42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).

Under governing regulations, the Social Security Administration conducts its "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, social security administrative hearings "are inquisitorial rather than adversarial." *Washington*, 906 F.3d at 1364 (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

On review in federal court, the scope of review is limited to determining if (1) substantial evidence supports the Commissioner's findings, and (2) the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). To make this determination, a reviewing court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

In testing for substantial evidence, a court may not "reweigh the evidence" or "decide the facts anew." *Winschel*, 631 F.3d at 1178. Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the court must defer to the ALJ's decision even if

the evidence preponderates against it. *Crawford*, 363 F.3d at 1158-59. However, the court will not "merely rubber-stamp a decision ... [and] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019); *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) ("Within this narrowly limited role, however, the federal courts 'do not act as automatons' … '[w]e retain an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable") (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). Remand is appropriate for further factual development where the record reveals evidentiary gaps that result in unfairness or clear prejudice. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

A reviewing court is also required to review the ALJ's decision to determine if the correct legal standards were applied. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide sufficient reasoning for determining that the proper legal analysis has been conducted, then the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **THE ALJ'S DECISION**

The ALJ in this case proceeded through the five-step analysis as follows: At step one, the ALJ found that Mr. LeBeau had not engaged in substantial gainful activity from his alleged disability onset date through his date of death. R. 14. At step two, the ALJ found that Mr. LeBeau had the following severe impairments: obesity; minimal degenerative disc disease of the cervical, thoracic, and lumbar spines; and arthralgias. R. 14-15. At step three, the ALJ found that Mr. LeBeau did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment in the Listings. R. 15.

As a predicate to step four, the ALJ found that Mr. LeBeau, through his date of death, had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) except he could frequently climb ramps and stairs; frequently stoop, kneel, crouch, and crawl; frequently reach overhead; occasionally be exposed to extreme heat, extreme cold, and vibration; and could never climb ladders, ropes, or scaffolds. R. 15. At step four, based on the above RFC assessment, the ALJ found Mr. LeBeau unable to perform his past relevant work. R. 17. However, after considering Mr. LeBeau's age, education, work experience, RFC, the Medical-Vocational guidelines, and testimony from the vocational expert ("VE"), the ALJ found Mr. LeBeau could perform the requirements of representative occupations such as a day worker, a hand packer, and a cleaner II through the date of his death. R. 17-19. Accordingly, the ALJ found Mr. LeBeau had not been under a disability, as defined in the Social Security Act, from his alleged onset date of July 18, 2015, through his date of death on November 28, 2019. R. 19.

## DISCUSSION

Plaintiff raises two arguments in this appeal. First, she argues that the ALJ failed to apply the correct legal standards to her hearing testimony regarding her husband's pain and limitations. Second, she argues entitlement to a legitimate valid hearing before an ALJ who has lawful authority to hear and decide her claim based on valid legal authority. I will address each argument in turn.

**I.     The ALJ Properly Applied the Pain Standard**

Plaintiff argues that "the ALJ's stated reasons for rejecting [her] testimony regarding her husband's pain and limitations were not based on the correct legal standards or supported by substantial evidence." [DE 26 at 1]. Plaintiff notes that the ALJ's decision fails to even mention her testimony from the administrative hearing. Defendant does not directly address Plaintiff's

contention that the ALJ did not specifically mention Plaintiff's hearing testimony.[1]  Instead, Defendant focuses on the ALJ's analysis of the entire record and argues that substantial evidence supports the ALJ's clearly articulated assessment of Mr. LeBeau's symptoms.

Under governing regulations, a claimant's statements about pain or other symptoms alone will not establish a disability.  *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about pain or other symptoms will not alone establish that are disabled.").  When a claimant attempts to establish a disability through his or her own subjective testimony about pain or other subjective symptoms, the Eleventh Circuit's applicable "pain standard" for evaluating these symptoms requires (1) evidence of an underlying medical condition; and (2) *either* (a) objective medical evidence confirming the severity of the alleged pain, *or* (b) evidence that the objectively determined medical condition can reasonably be expected to give rise to the alleged pain.  *Id.*; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  *see also Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999); *see also* 20 C.F.R. § 404.1529.

A reversal is warranted if the ALJ's decision contains no evidence of the proper application of the pain standard.  *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that the ALJ does not have to recite the

---

[1] The regulations and law governing this first issue discuss an ALJ's obligations regarding the consideration of a disability claimant's testimony of pain or other subjective symptoms. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (the Eleventh Circuit's pain standard "applies when *a disability claimant* attempts to establish disability *through his own testimony of pain or other subjective symptoms*") (emphasis added). Here, the disability claimant, Mr. LeBeau, passed away prior to the hearing before the ALJ.  This case is thus unique in that Plaintiff was substituted as a party for purposes of pursuing her husband's DIB claims.  However, it is not clear that the ALJ was required to consider Plaintiff's testimony about *her husband's* pain or other subjective symptoms he felt.  The word "subjective" means based on or influenced by personal feelings or opinions.  This suggests that the ALJ would only be required to consider a disability claimant's testimony about his or her own personal pain and symptoms.  Here, the claimant was not available to testify at the hearing and the ALJ heard testimony from Mrs. LeBeau about her husband's medical condition. Neither party has cited any authority governing the ALJ's obligations in this unique situation and I am unaware of any.  As this issue has not been squarely addressed by either party, for purposes of this analysis, I give Plaintiff the benefit of the doubt and assume without deciding that the ALJ was required to consider her hearing testimony as part of the ALJ's overall analysis.

pain standard word for word; rather, the ALJ must make findings that indicate that the standard was applied). In addition, if the ALJ chooses to discredit the subjective testimony of a claimant's pain, the ALJ must clearly articulate adequate reasons for discrediting the claimant's allegations of disabling symptoms or the record must be obvious as to the credibility finding. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

Here, I find that the ALJ properly articulated and applied the pain standard. Although the ALJ did not expressly discuss Plaintiff's hearing testimony, as discussed below, the ALJ expressly discussed the pain standard, considered several pieces of medical evidence in the record, and adequately explained his reasons for discounting any subjective reports of Mr. LeBeau's pain which are supported by the medical record. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011) (quoting *Foote*, 67 F.3d at 1562 ("If proof of disability is based upon subjective evidence and a credibility determination is, therefore, critical to the decision, the ALJ must either explicitly discredit such testimony *or the implication must be so clear as to amount to a specific credibility finding*") (emphasis added). The ALJ found that Mr. LeBeau was limited to a restricted range of medium work. Substantial evidence in the record supports this conclusion.

First, the ALJ properly stated the standard governing his evaluation of the intensity, persistence and limiting effects of Mr. LeBeau's reported symptoms. R. 15. Then, the ALJ acknowledged Mr. LeBeau's sudden death by heart attack and went on to discuss the medically documented symptoms relating to Mr. LeBeau's alleged headaches, and neck and back problems before concluding that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

      consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. This is a sad case because the claimant met an untimely demise due to a sudden heart attack. However, this does not equate to a finding of disability. Rather, the undersigned must examine the record prior to the fatal heart attack - and this does not support a finding of disability. The objective medical evidence of record has been summarized above and does not need to be repeated in this section other than to reiterate that that spinal imaging was fairly benign for the claimant's age and treatment notes (primarily with a chiropractor) noted good progress with minimal limitations. Other than going to the chiropractor for manipulations, that claimant primarily treated with ice and ibuprofen. At the consultative examination, the claimant reported that he was able to mow the grass. It should also be noted that there are no medical opinions in the record that support a less-than-medium residual functional capacity (meaning, a sedentary or light residual functional capacity). The undersigned thus finds that the claimant has failed to establish disability in this case.

R. 17.

      The ALJ's articulated reasons supporting the above conclusion included the ALJ's determination that Mr. LeBeau had several underlying medical conditions. R. 14-15 (finding that Mr. LeBeau had the severe impairments of obesity; minimal degenerative disc disease of the cervical, thoracic, and lumbar spines; and arthralgias; as well as the non-severe impairments of hypertension and headaches). In assessing Mr. LeBeau's RFC, the ALJ included a clear and chronological discussion of Mr. LeBeau's documented medical history. R. 15-17. Throughout this discussion, the ALJ accounted for Mr. LeBeau's statements to providers of continued back pain, neck pain, and headaches following a car accident, but the ALJ also cited to objective medical evidence that demonstrated effective treatment for these conditions. *Id.* Notably, the ALJ's discussion coincided in large part with Plaintiff's hearing testimony that Mr. LeBeau stopped working after the accident due to back, neck, and shoulder pain; went to chiropractic treatment which "just kind of helped ease the pain a little bit[;]" was taking over-the-counter, non-prescription medication for the pain; and experienced difficulty standing or sitting for long periods of time. R. 30-33.

Although the record does not provide objective evidence confirming the severity of Mr. LeBeau's alleged pain, the ALJ found that Mr. LeBeau's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms." R. 17. The ALJ's decision makes clear that the ALJ discredited subjective evidence concerning the intensity, persistence, and limiting effects of these symptoms because they were not consistent with the objective medical evidence. Any contention by Plaintiff that Mr. LeBeau had disabling pain contrasted sharply with relatively normal medical records between Mr. LeBeau's alleged onset date and his date of death. The ALJ cited to and relied upon substantial evidence in the record showing Mr. LeBeau's progressive improvement, which supports the ALJ's decision that Mr. LeBeau was not totally disabled precluding alternative work. For example, in two sections, the ALJ summarized Mr. LeBeau's progression as follows:

> The most recent [chiropractic] note is dated May 2, 2018. [Mr. LeBeau] reported that the most recent flair-up had been in June 2017 and had occurred while traveling. [Mr. LeBeau] reported that overhead lifting aggravates his symptoms. [Citing R. 451]. The chiropractor's assessment was that "[T]he patient's condition will be treated as needed. The patient is responding fairly well and is showing a gradual reduction in symptoms. [Citing R. 452]. [Mr. LeBeau] did not schedule any future appointments, which appears to be consistent with the chiropractor's assessment.
>
> Exhibit 10F contains an intake visit with a primary care physician on November 6, 2019. The note begins, "He is a new patient to our practice. He complains of back pain ever since a car accident where he was rear-ended by someone who was texting and driving three years ago. He was a restrained driver. Airbags did not deploy, and he was sitting still and hit from behind. He is applying for disability at the advice of the attorney. He said that he and the other driver had GEI[]CO insurance, so nothing was done. He said he is not able to work. When he mows grass or even takes a shower he has to sit and rest for a while. He wants a handicap placard application as well. He said what has helped him in the past is taking Ibuprofen, using ice and going to a chiropractor, Dr. Morgan in Stewart Florida and that is where he has had x-rays. He says that due to the fact that he and his wife are not working, neither one, that he has not gone in a while." [Citing R. 461]. Physical exam showed a BMI of 38 (level II obesity) and a blood pressure of 175/90. However, heart and lung sounds were normal, and musculoskeletal and neurological exams were also normal. There was no edema, straight leg raises were

> negative, and the spine had a normal appearance. The doctor diagnosed back pain with spasms and labile hypertension. The doctor's plan was to order labs, gets the claimant's chiropractic records, and keep a watch on his blood pressure. [Citing R. 462]. No medications were prescribed. By the end of the month, the claimant was dead from a sudden heart attack.

R. 16. The above summation by the ALJ fairly and accurately characterized the cited objective medical records.

The ALJ also considered the medical opinion evidence. R. 17. At the reconsideration level in October 2018, state agency physiological consultant Minerva Hernandez, M.D., opined that Mr. LeBeau could perform medium work. R. 17 (citing R. 56-57). Although not expressly mentioned in the ALJ's decision, the record shows that Dr. Hernandez's opinion was affirmed by state agency medical consultant Celio Burrowes, M.D. R. 308-09. In his decision, the ALJ found Dr. Hernandez's opinion to be "fairly persuasive" as Dr. Hernandez is a medical doctor with program knowledge who had the opportunity to review a large portion of the record and because her opinions are reasonable in light of the medical evidence of record. R. 17. Notably, the ALJ adopted a medium residual functional capacity consistent with Dr. Hernandez's opinion but "[n]otwithstanding the foregoing," the ALJ adjusted the RFC to include certain additional limitations. R. 17 (finding Dr. Hernandez's opinion "fairly persuasive" insofar as Plaintiff could perform work at the medium exertional level while also imposing a number of additional limitations due to Mr. LeBeau's "obesity and spinal issues" and "because [Mr. LeBeau] had mild cervical degenerative disc disease and alleged that overhead work aggravated this condition."). This additional adjustment by the ALJ demonstrates credit given to statements and testimony regarding Mr. LeBeau's limitations.

Plaintiff takes issue with the ALJ's summary of Mr. LeBeau's imaging studies and asserts that the ALJ "improperly substituted his judgment for that of a medical expert when he determined

'that spinal imaging was fairly benign for the claimant's age.'" [DE 20 at 6-7 (citing R. 17)].  I disagree.  In his decision, the ALJ cited "a cervical MRI dated September 2016 showing 'minimal' bulges at C4-5, C5-6, C6-7, and C7-T1."  R. 16.  The ALJ also cited "a thoracic MRI taken that same month showed a 'minimal' disc bulge at T7-8."  *Id.*  And, finally, the ALJ cited "a lumbar MRI taken that same month showed mild degenerative changes at L5-S1 and L4-5."  *Id.*  The ALJ's summary of the imaging studies is consistent with the record.  Specifically, the cervical MRI reflects "borderline disc bulge" at C3-4 and C7-T1, and "minimal" disc/osteophyte bulges at C4-7.  R. 298.  Similarly, the lumbar MRI reports "mild early degenerative disc changes" at L5-S1 and "mild degenerative disc changes" at L4-5.  R. 301-02.  The ALJ's remark that "spinal imaging was fairly benign for the claimant's age" is consistent with this record evidence and reflects the ALJ's proper role in assessing Mr. LeBeau's RFC based on all relevant medical and other evidence in the record.

     Plaintiff also asserts that the ALJ did not consider her testimony regarding Mr. LeBeau's inability to afford follow-up appointments and his reluctance to take stronger prescribed pain medication.  [DE 20 at 7-8].  However, the fact that Mr. LeBeau's did not seek additional medical treatment was not the primary or exclusive factor driving the ALJ's ultimate decision.  On the contrary, the ALJ's decision hinged on a comprehensive review of the medical evidence demonstrating largely normal medical findings for Mr. LeBeau as well as the opinions of a state agency examining and non-examining consultant physicians.  *See Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) ("[w]hen the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, this court will remand for further consideration. … However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or

ability to work despite the alleged disability, then no reversible error exists) (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012)).

Plaintiff also takes issue with the ALJ's statement about Mr. LeBeau's ability "to mow the grass" arguing that this finding is not substantially supported. However, this statement by the ALJ is supported by a medical record dated November 6, 2019, documenting Mr. LeBeau's statement to his provider that when he "mows grass or even takes a shower he has to sit and rest for a while." R. 16, R. 461. The fact that Mr. LeBeau has to sit and rest while mowing does not negate the fact that he did mow the grass. In addition, as with Mr. LeBeau's conduct in not seeking medical treatment, this finding about mowing the grass was not the sole factor driving the ALJ's decision. Rather, this was one of a whole host of other considerations the ALJ accounted for in assessing Mr. LeBeau's symptoms and overall RFC.

In sum, Plaintiff has not demonstrated reversible error. Because the ALJ properly applied the Eleventh Circuit pain standard and because substantial evidence supports his holistic analysis under the standard, the ALJ's decision must be affirmed.

**II.     The ALJ Acted Under Lawful Authority**

Plaintiff argues that the Commissioner's decision denying Mr. LeBeau's disability benefits claim was constitutionally defective because the Social Security Act provision that limits the President's authority to remove the Presidentially-appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers. [DE 20 at 9-11]. Relying upon *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), Plaintiff contends that the government deprived her of a valid administrative adjudicatory process and she requests "a legitimate valid hearing before an ALJ who has lawful

authority to hear and decide her husband's disability claim based on valid legal authority." [*Id.* at 10-11]. Plaintiff makes clear that she is not challenging the ALJ's appointment; rather, Plaintiff asserts that "her constitutional rights violated because several government actors exercised power that they did not lawfully possess due to a constitutionally defective delegation of power." [DE 26 at 3].

Defendant agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers doctrine "to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." [DE 25 at 10] (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op.")). However, citing a subsequent Supreme Court ruling—*Collins v. Yellen*, 141 S. Ct. 1761 (2021)—Defendant contends that Plaintiff is not entitled to a remand because she cannot show that the unconstitutional removal restriction caused compensable harm in this case. [*Id.*]. Defendant asserts that "Plaintiff cannot establish any nexus between the removal restriction and the appointment of the ALJ who denied [Mr. LeBeau's] claim." [*Id.* at 12]. Defendant asserts further that Plaintiff's rehearing request should be denied under the harmless error doctrine, the de facto officer doctrine, the rule of necessity, and broad prudential considerations. [*Id.* at 16-19].

In *Seila Law*, the Supreme Court held that the Consumer Financial Protection Bureau's ("CFPB") "leadership by a single individual removable only for inefficiency, neglect, or malfeasance violate[d]" the constitutional separation of powers doctrine. *Seila Law*, 140 S. Ct. at 2197. In *Collins*, the Supreme Court considered whether the "for cause" removal provision applicable to the head of the Federal Housing Finance Agency ("FHFA") was constitutional. Collins, 141 S. Ct. at 1770. Like *Seila Law*, the Supreme Court in *Collins* held that the removal provision violated constitutional separation of powers principles and was thus unconstitutional.

*Id.* at 1787. The *Collins* Court did not resolve whether the party challenging the removal provision was entitled to relief, but observed that:

> Although an unconstitutional provision is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment), it is still possible for an unconstitutional provision to inflict compensable harm. And the possibility that the unconstitutional restriction on the President's power to remove a Director of the FHFA could have such an effect cannot be ruled out. Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.* at 1788-89. Notably, the *Collins* Court observed that the unlawfulness of a removal provision "[did] not strip the Director of the power to undertake the other responsibilities of his office." *Collins*, 141 S. Ct. 1761, 1788 n.23 (2021).

In her concurring opinion, Justice Kagan specifically discussed the implications of *Collins* on the Social Security Administration. *Id.* at 1799-02 (Kagan, J., concurring). In relevant part, Justice Kagan observed that:

> [T]he majority's approach should help protect agency decisions that would never have risen to the President's notice. Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block...but given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone...When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue.

*Id.* at 1802.

The Eleventh Circuit has yet to rule on this precise constitutional challenge, however "[m]ultiple courts reviewing denials of applications for Social Security Benefits in the wake of

*Seila Law* and *Collins* have similarly concluded plaintiffs must establish the removal provision of 42 U.S.C. § 902(a)(3) caused some compensable harm to warrant remand." *Dixon v. Kijakazi*, No. 20-82316-Civ-Smith/Matthewman, 2022 WL 2908497, at *12 (S.D. Fla. May 26, 2022), report and recommendation adopted, 2022 WL 2904549 (S.D. Fla. July 22, 2022) (quoting *Rickles v. Kijakazi*, 2022 WL 1153803, at *5–6 (M.D. Fla. Apr. 19, 2022) (finding that claimant did not establish that the ALJ's review of her Social Security claim for benefits suffered from any "unconstitutional taint" because she failed to argue that she suffered any form of compensable harm stemming from the removal provision of 42 U.S.C. § 902(a)(3)); *Smith v. Kijakazi*, 2022 WL 1063640, at *9 (N.D. Ala. Apr. 8, 2022) (rejecting the claimant's argument that Commissioner Saul's extended tenure affected her disability determination because it was conclusory.).

In *Alicea v. Kijakazi*, No. 21-60760-Civ-Dimitrouleas/Snow, 2022 WL 902858, at *9 (S.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, 2022 WL 898563 (S.D. Fla. Mar. 28, 2022), the court first, citing *Standifird v. Kijakazi*, 2021 WL 5634177, at *4 (S.D. Cal. Dec. 1, 2021), and *Perez Kocher v. Comm'r of Soc. Sec.*, 2021 WL 6334838, at *5-6 (M.D. Fla. Nov. 23, 2021), found unwarranted any relief to a claimant raising a separation of powers argument when the ALJ who rendered the unfavorable decision in question had been re-appointed by Acting Commissioner Nancy Berryhill. The court next explained that other courts uniformly have denied relief when a plaintiff could not demonstrate any harm caused to them by the removal provision. *Id. at * 9* (collecting cases); *see also Perez-Kocher,* at *4 (finding that a plaintiff had failed to state a claim upon which relief could be granted because the plaintiff could not establish that the Acting Commissioner's unconstitutional tenure protection caused compensable harm). The *Alicea* court concluded that the "harm identified by the Plaintiff in the instant case is the fact that he received unfavorable decisions from an ALJ and Appeals Council pursuant to delegation of duties to those

officers by Commissioner Saul, who was operating under an unconstitutional removal clause. Clearly this is not sufficient, as it would apply to virtually every disability case since the enactment of § 902(a)(3) and would render meaningless *Collins'* requirement of direct harm." *Alicea*, at *10.  Additionally, plaintiff had "failed to demonstrate that the removal provision had any actual or possible impact on the unfavorable decision he received, and no relief is warranted on this ground" such that the ALJ's decision should not be disturbed. *Id.*

In *Herring v. Comm'r of Soc. Sec.*, the court ruled that the removal provision does not necessitate remand or a rehearing of a plaintiff's claim because (1) the removal provision is severable from the remainder of the Social Security Act, and (2) the plaintiff failed to show how the unconstitutional removal provision harmed him. *Herring v. Comm'r of Soc. Sec.*, 2022 WL 2128801, at *6 (M.D. Fla. June 14, 2022).

Here, consistent with the above abundance of authority, I find Plaintiff's argument to be without merit for two reasons.  First, the ALJ who rendered the unfavorable decision in question had been re-appointed by the Acting Commissioner.  Specifically, at the time of the ALJ's decision on July 1, 2020, the ALJ was properly appointed because "on July 16, 2018, the Acting Commissioner of Social Security ratified the appointments of [the Social Security Administration's] ALJs and approved those appointments as her own." *See* Social Security Ruling 19-1p; Titles II and XVI: Effect of the Decision in *Lucia v. Securities and Exchange Commission* (SEC) On Cases Pending at the Appeals Council, 84 FR 9582-02, 2019 WL 1202036 (March 15, 2019).  Thus, Plaintiff's contention that the ALJ was without lawful authority to hear and decide her claim—either due to a "constitutionally defective delegation of power" [DE 26 at 3] or otherwise—is entirely unpersuasive.

Second, more importantly, Plaintiff has failed to show a compensable harm against her stemming from the removal provision of 42 U.S.C. § 902(a)(3). The harm identified by Plaintiff is that she did not receive a constitutionally valid hearing or process resulting in an "unfavorable decision from this constitutionally illicit ALJ adjudication process." [DE 26 at 4]. This broad argument is plainly insufficient and would render meaningless *Collins'* requirement of direct compensable harm. Plaintiff "fails to show that absent the alleged unconstitutional provision, [Plaintiff's] claim would have been decided differently at either the ALJ or the Appeals Council level." *Herring*, at *5. This failure by Plaintiff "to demonstrate that the removal provision had any actual or possible impact on the unfavorable decision [s]he received" renders her request for relief on this ground wholly lacking in merit. *Tucker v. Kijakazi*, No. 21-60943-Civ-Dimitrouleas/Snow, 2022 WL 750559, at *13 (S.D. Fla. Feb. 8, 2022), *report and recommendation adopted*, 2022 WL 742744 (S.D. Fla. Mar. 11, 2022).

## CONCLUSION

In sum, my review is limited to determining if the Commissioner's final decision is supported by substantial evidence and based on proper legal standards. In this case, it is. The ALJ held a hearing and issued a decision that complies with applicable legal standards and is properly based upon substantial evidence in the record. Contrary to Plaintiff's arguments, the ALJ was acting within his lawful authority when he applied proper legal standards and offered justifiable reasons with accurate citations to the evidence of record—including the objective medical evidence—in support of the final decision finding Mr. LeBeau not disabled.

Accordingly, I find that Defendant's administrative decision is supported by substantial evidence, comports with applicable legal standards, and should be affirmed. I thus respectfully **RECOMMEND** that Defendant's final administrative decision be **AFFIRMED**; that Plaintiff's

Motion for Summary Judgment [DE 20] be **DENIED**; that Defendant's Motion for Summary Judgment [DE 25] be **GRANTED**; and that a final judgment be entered in Defendant's favor.

<u>**NOTICE OF RIGHT TO OBJECT AND SHORTENED OBJECTIONS PERIOD**</u>

Because this referred matter has been pending for a long time, and to promote judicial economy and finality to the parties, a prompt resolution is required. As such, I find it necessary and appropriate to shorten the time for any objections pursuant to Southern District of Florida Magistrate Judge Rule 4(a). Accordingly, the parties shall have **SEVEN (7) DAYS** from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge K Michael Moore. *See* 28 U.S.C. § 636(b)(1)(C); S.D. Fla. Mag. J. R. 4(a). Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 29th day of August, 2022.

SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE